# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAFELITE GROUP, INC. AND SAFELITE SOLUTIONS LLC )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>GEORGE JEPSEN, in his official capacity )<br>as Attorney General for the State of )<br>Connecticut; and THOMAS LEONARDI, in )<br>his official capacity as the Commissioner of )<br>the Connecticut Insurance Department, )<br>)<br>Defendants. )<br>) | Civil Action No. 3:13-cv-1068 |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Craig A. Raabe
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103
(860) 275-8200
(860) 275-8299
craabe@rc.com

Jay P. Lefkowitz, P.C.
Matthew F. Dexter
Steven J. Menashi
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
(212) 446-6460
lefkowitz@kirkland.com
matthew.dexter@kirkland.com
steven.menashi@kirkland.com

Tefft W. Smith
KIRKLAND & ELLIS LLP
655 Fifteenth Street NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
tefft.smith@kirkland.com

*Counsel for Plaintiffs*

TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| ARGUMENT | | 2 |
| I. | NO SUBSTANTIAL STATE INTEREST JUSTIFIES THE REGULATION OF SAFELITE'S SPEECH | 2 |
| II. | PA 13-67(C)(2) DOES NOT DIRECTLY AND MATERIALLY ADVANCE ANY STATE INTEREST. | 5 |
| III. | THE SPEECH RESTRICTIONS IN PA 13-67(C)(2) ARE NOT NARROWLY TAILORED. | 8 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*44 Liquormart, Inc. v. Rhode Island,*
  517 U.S. 484 (1996) ............................................................................................. 4

*Alexander v. Cahill,*
  598 F.3d 79 (2d Cir. 2010) ................................................................................... 2

*Allstate Ins. Co. v. Abbott,*
  495 F.3d 151 (5th Cir. 2007) ........................................................................ passim

*Allstate Ins. Co. v. Serio,*
  No. 97-CIV-0670, 2000 WL 554221 (S.D.N.Y. May 5, 2000) ......................... 6, 9

*Allstate Ins. Co. v. South Dakota,*
  871 F. Supp. 355 (D.S.D. 1994) ........................................................................ 4, 9

*Bacchus Imports, Ltd. v. Dias,*
  468 U.S. 263 (1984) ............................................................................................. 3

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
  447 U.S. 557 (1980) ............................................................................................. 8

*Cincinnati v. Discovery Network, Inc.,*
  507 U.S. 410 (1993) ............................................................................................. 6

*Edenfield v. Fane,*
  507 U.S. 761 (1993) ..................................................................................... 2, 3, 5

*Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy,*
  512 U.S. 136 (1994) ............................................................................................. 2

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,*
  487 U.S. 781 (1988) ........................................................................................... 10

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
  547 U.S. 47 (2006) ............................................................................................. 10

*Sorrell v. IMS Health Inc.,*
  131 S. Ct. 2653 (2011) ......................................................................................... 2

*Thompson v. W. States Med. Ctr.,*
  535 U.S. 357 (2002) ............................................................................................. 8

*Waste Mgmt. Holdings, Inc. v. Gilmore,*
  252 F.3d 316 (4th Cir. 2001) ............................................................................... 3

# INTRODUCTION

The omissions and errors in the State's response to Safelite's motion for a preliminary injunction are glaring and dispositive. The State starts by incorrectly labeling PA 13-67(c)(2) "presumptively constitutional," even though the State bears the burden of establishing its constitutionality. And the State does not come even close to demonstrating that the law satisfies the Supreme Court's *Central Hudson* test for regulating commercial speech.

First, the State does not claim that Safelite either engages in misleading speech or fails to comply with existing laws requiring it to inform consumers of their freedom of choice. Second, although the State claims that the statute was intended to protect "consumer choice," this contention is an impermissible *post hoc* rationalization flatly inconsistent with the legislative history and is, in any event, an interest the statute neither directly nor materially advances. To the contrary, the State's opposition confirms that the law's true purpose is to divert business from Safelite to other, in-state glass repair shops—which is not a legitimate state interest. Third, the State's attempt to defend the statute as narrowly tailored fails even to acknowledge that the Department of Insurance, the agency responsible for protecting consumer interests in this arena, concluded that PA 13-67(c)(2) was "unnecessary," because existing laws already protected "consumer choice" and it "had received no complaints regarding this issue."

In short, like the substantially similar speech restriction that the Fifth Circuit struck down in *Allstate Ins. Co. v. Abbott*—a case that the State all but ignores—PA 13-67 combines an unconstitutional speech restriction with an unconstitutional speech compulsion that cannot be justified when narrower, already effective alternatives are available. Accordingly, Safelite is likely to succeed on its First Amendment challenge to PA 13-67(c)(2), and this Court should maintain the status quo and enjoin its enforcement.

## ARGUMENT

The State's claim that PA 13-67(c)(2) is "presumptively constitutional" is wrong. Defs.' Br. 2. There is no dispute that PA 13-67(c)(2) impairs speech protected by the First Amendment. So the burden falls to the State to justify the regulation. *See Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2667 (2011) ("Under a commercial speech inquiry, it is the State's burden to justify its content-based law as consistent with the First Amendment."); *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) ("It is well established that '[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'"); *Alexander v. Cahill*, 598 F.3d 79, 90 (2d Cir. 2010) (same). "The State's burden is not slight." *Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 143 (1994). And it cannot carry its burden here.

### I. NO SUBSTANTIAL STATE INTEREST JUSTIFIES THE REGULATION OF SAFELITE'S SPEECH.

The State attempts to defend PA 13-67(c)(2) by asserting that "Connecticut has a longstanding public policy in favor of consumer choice in auto repair." Defs.' Br. 8. But "[u]nlike rational-basis review, the *Central Hudson* standard does not permit [a court] to supplant the precise interests put forward by the State with other suppositions." *Edenfield*, 507 U.S. at 768 (internal citation omitted). So the State cannot now rely on an after-the-fact rationale that was not the actual purpose behind the law, and PA 13-67 must stand or fall on the actual reasons for its enactment. *Id.*

The State cites no evidence establishing that an interest in "consumer choice" motivated the adoption of PA 13-67(c)(2). Instead, the State argues that such a goal either was "*implicit* in Connecticut's enactment of PA 13-67" or can be inferred from various proposed bills that the legislature considered but did not adopt. Defs.' Br. 4, 8-10. But the uncontroverted evidence in Safelite's opening brief demonstrated that, throughout the legislative hearings related to PA 13-67,

2

legislators repeatedly explained that the purpose of the Act was to advantage local businesses in competition with larger interstate businesses—specifically Safelite. Pls.' Br. 10-13.

The evidence before the Legislature showed that because the only third-party claims administrators with affiliated repair shops were out-of-state businesses, the law would likely redirect customers to in-state repair shops. *See id.* 11-12. And contrary to the State's assertion, it does not matter that "the requirements of the Act apply equally to Connecticut and non-Connecticut insurance companies and insurance claims administrators alike," Defs.' Br. 2, because "[a] finding that state legislation constitutes 'economic protectionism' may be made on the basis of either ***discriminatory purpose*** or ***discriminatory effect***." *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984) (emphases added); *see also Allstate*, 495 F.3d at 160 (court looks at whether a statute "discriminates against interstate commerce either facially, by purpose, or by effect"). The evidence shows that the purpose of the law is economic protectionism, and the State's *post hoc* rationalizations of an alleged state interest in "consumer choice" are irrelevant. *See Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 336 (4th Cir. 2001) ("[C]ontemporary statements by decisionmakers on the record or in minutes" are probative of legislation's purpose); *Edenfield*, 507 U.S. at 768.

But even if this Court were to supplant the actual purpose identified by the legislature and consider the alleged interest in "consumer choice," it is clear that the State's interest is not in "protecting consumer choice" so much as it is in ensuring that consumers make particular choices. The State does not argue that PA 13-67(c)(2) would help to make consumers more aware of their right to choose a glass repair shop or otherwise prevent consumers from being misled. *See Allstate*, 495 F.3d at 167 (noting that the law there "do[es] not require that customers be informed of a[n] insurer/body shop arrangement or the existence of a law against steering, regulations which would arguably reduce the potential for consumer confusion"). Nor does the State argue that Safelite's

3

communications with its customers are in any way misleading or deceptive. Independent of PA 13-67(c)(2), Safelite's consumers are already appropriately informed of their legal rights and of the relationship between Safelite Solutions and Safelite Autoglass. *See* Pls.' Br. 4-5; *Allstate*, 495 F.3d at 167 (similar disclaimers "offer ample protection against the danger of consumer confusion").

At bottom, the State argues that PA 13-67 serves an interest in consumer choice because it will reduce the number of glass repairs performed by Safelite. In the State's view, consumers apparently only "exercise their statutory right under Connecticut law [to choose a glass repair shop]" when they choose a non-Safelite shop. *See* Defs.' Br. 6. And the State's proffered affidavits, Exs. E-O, confirm that the State's post hoc "consumer choice" rationale is really an interest in manipulating customer choices to ensure that consumers patronize a wider range of businesses in Connecticut. *Id.* 7-8 (arguing that a decrease in work performed by non-Safelite shops when Safelite became the Allstate claims administrator reflects an effect on consumer choice).

But the State is not allowed to regulate speech because it wants to drive consumers to make particular choices. The Supreme Court has "rejected the notion that the Government has an interest in preventing the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions with the information" or attempting to divert customers from one form of lawful business to another. The Supreme Court has held that not even a state interest in reducing lawful "vice activity," such as gambling or drinking, can justify a restriction on commercial speech. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 514 (1996). And as the Fifth Circuit ruled in striking down a similar speech restraint, "[a]ttempting to control the outcome of the consumer decisions following such communications by restricting lawful commercial speech is not an appropriate way to advance a state interest in protecting consumers." *Allstate*, 495 F.3d at 167; *see also Allstate Ins. Co. v. South Dakota*, 871 F. Supp. 355, 358 (D.S.D. 1994) ("[T]he State cannot

4

properly protect [local businesses] from the networks who will charge a lower price and thereby help the local businesses maintain their profit margins."). Here, by the State's own admission, the actual interests served by PA 13-67 are economic protectionism and the manipulation of customer choices—neither of which are legitimate interests that can justify a restriction on speech.

Moreover, the State has not shown that there was any harm to customer choice that would be alleviated by PA 13-67(c)(2). *See Edenfield*, 507 U.S. at 770-71 ("[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.") To the contrary, the evidence before the legislature when it adopted the speech restriction was that existing law already protected customers and that "this is not problematic for consumers." Pls.' Br. 9-10 (describing Insurance Department testimony). So PA 13-67(c)(2) did not address any harm to consumers from alleged "steering" or from understanding their legal rights. Rather, the only "harm" the State identifies as being addressed by PA 13-67(c)(2) is that customers are choosing Safelite shops too often. This is simply not a "harm" that the State is entitled to address by restricting protected commercial speech.

## II. PA 13-67(c)(2) DOES NOT DIRECTLY AND MATERIALLY ADVANCE ANY STATE INTEREST.

Even if the State could show a substantial state interest in protecting consumer choice, PA 13-67 does not directly and materially advance that asserted interest. The State claims that PA 13-67(c)(2) directly and materially advances consumer choice by "ensur[ing] that consumers have at least the minimum information they need to effectively exercise their right to choose a glass repair shop." Defs.' Br. 13. But that assertion does not withstand scrutiny.

First, if Safelite does not submit to the compelled speech required by PA 13-67(c)(2), then the law operates as a *total ban* on Safelite's speech related to its affiliated repair shops. In that case, customers will not receive any information—much less "the minimum information they need,"

5

*id.* 13—with which to exercise their right to choose a glass repair shop. Moreover, if Safelite does submit to the compelled speech, then PA 13-67(c)(2) requires Safelite to communicate a potentially misleading recommendation of a competing shop about which Safelite may not have any information. As the State acknowledges, other provisions of the law prohibit Safelite from informing consumers that choosing an unaffiliated shop will result in delays or lack of a guarantee, even if that information is true. *Id.* at 4. For that reason, the State's attempt to distinguish *Allstate Ins. Co. v. Serio*, No. 97-CIV-0670, 2000 WL 554221 (S.D.N.Y. May 5, 2000), on the grounds that "the requirements of PA 13-67(c)(2) do not 'lead to consumers receiving misleading information,'" Defs.' Br. 14, is off base. It goes without saying that a statute that either prohibits the dissemination of information to consumers or requires the dissemination of potentially misleading information cannot possibly advance an interest in promoting consumer choice.

Second, PA 13-67 only requires that the purported "minimum information [customers] need" be given to consumers by third-party claims administrators, like Safelite, that own affiliated glass repair shops. The State does not and cannot explain why consumers who call a third-party claims administrator that does not own an affiliated glass repair shop need not receive this "minimum information" as part of Connecticut's alleged interest in protecting consumer choice, even though some third-party claims administrators may have a financial incentive to refer business to particular shops. As the Supreme Court recognized in *Cincinnati v. Discovery Network, Inc.*, a statute does not materially advance an asserted state interest if it provides only "limited incremental support for the interest asserted," as when the state permits identical behavior from a different source that equally impairs the state's asserted interest. 507 U.S. 410, 425-427 (1993) (finding prohibition on news racks containing "commercial handbills" did not materially advance state interest in aesthetics and safety where city permitted equally unattractive news racks containing other content).

6

Third, the State provides no support for the assertion that the name of one additional glass repair shop is the "minimum information" necessary, or how that "minimum information" protects consumer choice.[1] As the Fifth Circuit recognized in *Allstate*, "it is not clear how requiring the insurer to recommend at least one other body shop . . . in addition to its tied shop—but not all shops—promotes fair competition. While this widens the circle of advantaged shops, it does not ensure overall fair competition for all body shops." 495 F.3d at 167. The Fifth Circuit also concluded that the similar law at issue there might "encourage business to shift away from the tied shop but it would not protect consumers, who may or may not choose to use a tied shop even after being informed of its advantages, and who may have a good rather than bad experience if they do choose to use a tied shop." *Id.*

Moreover, even accepting the incorrect premise that a lower utilization rate for Safelite shops reflects an increased exercise of consumer choice, the data that the State cites (none of which was before the legislature when it enacted PA 13-67) does not support its assertion that the provision of multiple names to consumers necessarily results in lower utilization of Safelite. For example, Safelite's utilization percentage among ▇ policyholders—which the State holds out as an example of a situation in which consumer choice is not protected—is ▇. Defs. Br. Ex. A. at 5. That rate is not materially different from the ▇ percentages among policyholders of ▇, which the State identifies as examples of situations where "consumers are provided with the information necessary

---

[1] The State claims that PA 13-67(c)(2) does not require Safelite to "recommend" a competing repair shop. *See* Defs.' Br. 2. But the State admits that "consumers usually do not know the names of any glass repair shops when they call their insurance claims administrator." *Id.* 13. In that context, customers will perceive Safelite's identification of an alternative repair shop to be a recommendation. If the State takes the position that Safelite need only provide the name of an unaffiliated repair shop but may simultaneously disparage the service customers are likely to receive from that shop, then PA 13-67(c)(2) seems unlikely to accomplish much of anything, let alone advance a substantial state interest.

7

to effectively make a choice."[2] Defs.' Br. 6. And Safelite's utilization percentage is below ▮ among policyholders of eight other insurance companies. Defs.' Br. Ex. A. at 5. In addition, the highest utilization rate that the State identifies comes from an insurance company, ▮▮▮, for which Safelite Solutions *does not handle the first notice of loss call*, and therefore does not have any involvement in the referral process. Kipker Decl. ¶ 2. Accordingly, even the post hoc evidence does not show that PA 13-67 directly, much less materially, advances the purported state interest in consumer choice.

### III. THE SPEECH RESTRICTIONS IN PA 13-67(c)(2) ARE NOT NARROWLY TAILORED.

In attempting to show that PA 13-67(c)(2) is narrowly tailored, the State observes that the Connecticut legislature considered other measures that would have promoted the purported interest in consumer choice. As an initial matter, the fact that the legislature considered other, more onerous (and constitutionally defective) speech restrictions is irrelevant to the question of whether PA 13-67(c)(2) is narrowly tailored. But one of those measures, which would have "prevented claims administrators from making any type of referral to an affiliated glass repair shop unless the insured customer had first been informed, by their insurance company, of their right to choose a glass repair shop," was more narrowly tailored. Defs.' Br. 16. The State's admission that this disclosure requirement would accomplish the same purpose as PA 13-67(c)(2) conclusively establishes that a less restrictive alternative is available. The State may not impose burdensome speech restrictions "when narrower restrictions on expression would serve its interest as well." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 565 (1980); *Thompson v. W. States*

---

[2] The State tacitly acknowledges that the referrals provided under the ▮▮▮ programs do not involve referrals to more than one glass repair shop at the same time, as PA 13-67(c)(2) does, but involve a single glass shop referral on a rotating basis. Defs.' Br. 6. As a result, those examples provide no insight into how PA 13-67 will affect utilization rates.

*Med. Ctr.*, 535 U.S. 357, 371 (2002) ("[I]f the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so.").

Safelite already informs customers of their right to choose a repair shop, and Safelite even goes further by disclosing its affiliation with Safelite Autoglass before a referral is made. *See* Pls.' Br. 9. These factual disclosures represent a less burdensome intrusion on Safelite's First Amendment rights than the compelled speech of being forced to recommend a repair shop that Safelite would not otherwise recommend. And those disclosures are effective, as the Connecticut Insurance Department made clear when it testified that "consumers are adequately protected by current law" and that the bill was "unnecessary." *Id.*, Ex. 3, Ins. Dep't Testimony.

Courts considering laws similar to PA 13-67(c)(2) have found that the availability of these less restrictive disclosures is dispositive. *See Allstate*, 495 F.3d at 168 ("The State Defendants here fail to demonstrate why a more limited restriction, such as a requirement that Allstate disclose its ownership of Sterling or inform customers of Texas's anti-steering law, would not have adequately served the state's interest in consumer protection."); *South Dakota*, 871 F. Supp. at 358 (holding "[t]he State has failed to meet its burden" to show narrow tailoring because "the State has, since 1986, had legislation in place preventing an insurer from requiring the use of a particular auto glass repair or replacement business"); *Serio*, 2000 WL 554221, at *25 (holding that state interests were "sufficiently served by Section 2610(a), which prohibits an insurer from requiring the use of a particular repair shop").

The State attempts to distinguish PA 13-67 from the speech restriction that the Fifth Circuit invalidated in *Allstate* by arguing that PA 13-67 does not "prohibit an insurer (or insurance claims administrator) from recommending its tied body shop to customers" or "place any restrictions on the truthful speech about the benefits of using a tied auto body repair shop." Defs.' Br. 17 (citation

omitted). But neither did the Texas law invalidated in *Allstate*. There, the insurer could recommend and say what it wanted about its affiliated shops as long as it provided a government-mandated recommendation of one non-affiliated shop. *See Allstate*, 495 F.3d at 164 (challenged statute "prohibits an insurer from providing to tied repair facilities a recommendation, referral or description not provided on identical terms to other preferred repair facilities").

The same is true here. The State admits that "insurance claims administrators remain free to refer an affiliated glass repair shop at any time, can provide whatever truthful information they wish to regarding such affiliated shop, and can even schedule an appointment for consumers at such affiliated shop, *as long as they also provide the name of one non-affiliated shop.*" Defs.' Br. 14 (emphasis added). The State seems to think that because PA 13-67(c)(2) allows a speaker to avoid the complete ban on speech related to affiliated shops if it capitulates to compelled speech, it is somehow narrowly tailored and therefore constitutional. That is not correct. "[I]n the context of protected speech, the difference [between compelled speech and compelled silence] is without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 796-97 (1988); *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006) ("[F]reedom of speech prohibits the government from telling people what they must say.").

## CONCLUSION

For the foregoing reasons, Safelite is likely to prevail on its claim that PA 13-67(c)(2) violates its rights under the First Amendment. And the State "do[es] not dispute that the alleged First Amendment violation, if proved, would constitute irreparable injury." Defs.' Br. 17. Accordingly, this Court should issue a preliminary injunction preventing the defendants from enforcing PA 13-67(c)(2) pending the resolution of this action.

Dated: October 18, 2013	Respectfully submitted,

By: _/s/ Craig Raabe_

Craig A. Raabe
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103
(860) 275-8200
(860) 275-8299
craabe@rc.com

Jay P. Lefkowitz, P.C.
Matthew F. Dexter
Steven J. Menashi
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Tefft W. Smith
KIRKLAND & ELLIS LLP
655 Fifteenth Street NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Plaintiffs Safelite Group, Inc and Safelite Solutions LLC.*

## **CERTIFICATION**

I hereby certify that on this 18th day of October, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Craig A. Raabe
Craig A. Raabe